UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION – CINCINNATI

| | | |
|---|---|---|
| HUDSON INSURANCE COMPANY | ) | Civil Action No. <u>1:18-cv-00192</u> |
| | ) | ELECTRONICALLY FILED |
| PLAINTIFF | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| STICE FAMILY LOGISTICS, LLC | ) | |
| 20 Ashwood Place | ) | |
| Amelia, OH 45102 | ) | |
| Serve: Chad Stice | ) | |
| 20 Ashwood Place | ) | |
| Amelia, OH 45102 | ) | |
| | ) | |
| NATHAN STICE | ) | |
| 108 Northfield Drive | ) | |
| Hillsboro, OH 45133 | ) | |
| Serve: Nathan Stice | ) | |
| 108 Northfield Drive | ) | |
| Hillsboro, OH 45133 | ) | |
| | ) | |
| KENDRA STICE | ) | |
| 108 Northfield Drive | ) | |
| Hillsboro, OH 45133 | ) | |
| Serve: Kendra Stice | ) | |
| 108 Northfield Drive | ) | |
| Hillsboro, OH 45133 | ) | |
| | ) | |
| DEFENDANTS | ) | |

## <u>COMPLAINT</u>

Comes the Plaintiff, Hudson Insurance Company ("Hudson"), by counsel, and for its Complaint against Stice Family Logistics, LLC, Nathan Stice, and Kendra Stice (collectively referred to as the "Defendants" or "Indemnitors," as the context dictates), and each of them, states as follows:

## JURISDICTION

1.    The Plaintiff, Hudson, is a Florida corporation duly authorized to transact business in the State of Ohio, with its principal place of business located in New York, New York.

2.    The Defendant, Stice Family Logistics, LLC ("Stice"), is an Ohio limited liability company with its principal place of business located in Amelia, Ohio, and it is an Indemnitor.

3.    The Defendant, Nathan Stice, is the President of Stice Family Logistics, LLC, and is an individual Indemnitor whose last known address is 108 North Field Drive, Hillsboro, OH 45133, such that he is a citizen and resident of the State of Ohio.

4.    The Defendant, Kendra Stice, is the spouse of Nathan Stice, and is an individual Indemnitor whose last known address is 108 North Field Drive, Hillsboro, OH 45133, such that she is a citizen and resident of the State of Ohio.

5.    The amount in controversy in this action exceeds the sum of $75,000.00, exclusive of interest and costs, and therefore this Court has jurisdiction pursuant to 28 U.S.C. § 1332.

6.    Jurisdiction is further conferred on this Court pursuant to 49 U.S.C. §14704, 49 U.S.C. § 10927, and 49 U.S.C. §13906 for actions relating to motor carrier broker bonds; 28 U.S.C. § 1441 for claims arising under laws of the United States including, but not limited to, 49 CFR §§ 300-399; 28 U.S.C. § 1337 for actions related to commerce; and 28 U.S.C. § 1352 which gives Federal District Courts original jurisdiction of any action on a bond executed under any law of the United States.

7.    The Defendants in this action are residents of this judicial district, and therefore, venue is proper herein pursuant to 28 U.S.C. § 1391.

## FACTS RELEVANT TO ALL COUNTS

8.    On January 27, 2017, Hudson, as surety, pursuant to 49 U.S.C. §13906(b), issued Broker's Surety Bond No. 100 522 37, Form BMC-84 (hereinafter the "Bond"), in the penal sum of $75,000.00, for Stice Family Logistics LLC, as principal, in favor of the United States of America for the use and benefit of any and all motor carriers or shippers to whom may be legally liable for damages as described in said Bond.

9.    Hudson received notices of multiple claims under its Bond by various bond claimants of Stice.  The total amount of said claims was $189,126.75.

10.    Hudson paid fifty-three (53) claims, pro-rata, on the Bond in the total amount of $75,000.00; the penal sum of the Bond.

## COUNT I
## INDEMNITY

11.    Hudson hereby restates, reiterates, and realleges each and every allegation set forth in Paragraphs 1 – 12 above as if fully set out herein verbatim.

12.    Prior to Hudson agreeing to write the aforementioned Bond for Stice Family Logistics LLC, Hudson requested that a General Agreement of Indemnity ("GAI") be completed and executed by the Indemnitors, and each of them. The Indemnitors, and each of them, agreed to Hudson's request and completed and executed the same.

13.    The GAI is attached hereto as Exhibit "A" and states in relevant part as follows:

**II. INDEMNITY AND HOLD HARMLESS**

A. The PRINCIPAL and INDEMNITORS, jointly and severally, shall exonerate, hold harmless, indemnify and keep indemnified the SURETY from and against any and all claims, demands, liability, losses, costs, and expenses of whatsoever kind or nature, including court costs, attorneys' fees, adjusting costs and investigative costs, and from and against any and all other such losses and expenses which the SURETY may sustain, suffer or

incur (i) [b]y reason of having executed or procured the execution of BONDS; (ii) [b]y reason of the failure of the PRINCIPAL or INDEMNITORS to perform or comply with any of the covenants or conditions of this Agreement, including but not limited to the payment of all premiums due for BONDS; (iii) [i]n enforcing any of the covenants, obligations, or conditions of this Agreement; (iv) [i]n making any investigation, obtaining or attempting to obtain a release under or exoneration of a BOND of PRINCIPAL or SURETY, or recovering or attempting to recover loss or expense paid or unpaid bond premium in connection with this Agreement or any BOND; (v) [i]n prosecuting or defending any action or claim in connection with any BOND, whether SURETY at its sole option elects to employ its own counsel, or permits or requires PRINCIPAL and INDEMNITORS to make arrangements for the SURETY'S legal representation; (vi) [b]y reason of the occurrence of any Event of Default by PRINCIPAL or any INDEMNITOR; (vii) [a]s a result of liability incurred or amounts paid in satisfaction or settlement of any or all claims, demands, damages, costs, losses, suits, proceedings or judgements relating to the PRINCIPAL'S non-performance of any obligation, CONTRACT, or any other matter under or covered by a BOND; (viii) [a]s a result of liability incurred or expenses paid in connection with claims, suits or judgments relating to an obligation, CONTRACT, or a BOND, including, without limitations, attorneys' fees and all legal expenses, including in-house attorneys' fees, adjusting fees or investigative fees, and all fees and costs for investigation, accounting, adjusting, engineering, or other professional services related to the adjustment of claims and losses deemed necessary or appropriate in the sole discretion of SURETY.

B. Payment shall be made to the SURETY by the PRINCIPAL and INDEMNITORS as soon as liability exists or is asserted against the SURETY, or upon the demand of SURETY, whether or not the SURETY shall have made any payment therefor.  Such payment shall be either equal to the amount of any reserve set by the SURETY, or equal to such amount as the SURETY, in its sole judgment, shall deem sufficient to protect it from loss.  The SURETY shall have the right to use the payment, or any part thereof, in payment or settlement of any liability, loss, cost or expense for which PRINCIPAL or the INDEMNITORS would be obligated to indemnify the SURETY under the terms of this Agreement.

C. In the event of any payment by the SURETY, the PRINCIPAL and INDEMNITORS further agree that in any accounting between the SURETY and the PRINCIPAL, or between the SURETY and

the INDEMNITORS, or either or both of them, the SURETY shall
be entitled to reimbursement for any and all disbursements made
by it in good faith in and about the matters contemplated by this
Agreement under the belief that it is or was liable for the sums and
amounts so disbursed, or that it was necessary or expedient to
make such disbursements, whether or not such liability, necessity,
or expediency existed; and that the vouchers or other evidence of
any such payments made by the SURETY shall be prima facie
evidence of the fact and amount of the liability of PRINCIPAL and
INDEMNITORS to the SURETY.  In addition to the payments to
be made to SURETY as set forth above, PRINCIPAL and
INDEMNITORS agree to pay to SURETY interest on all
disbursements made by SURETY at the maximum rate permitted
by law calculated from the date of each disbursement.

## III. ASSIGNMENT

A. The PRINCIPAL and the INDEMNITORS as their interests
may appear in the following subsections of this paragraph, hereby
assign, transfer, pledge and set over to SURETY effective as of the
effective date of each BOND executed by SURETY, the rights and
property described hereafter, as collateral, to secure any and all
obligations in this Agreement and any other indebtedness or
liabilities of the PRINCIPAL, or INDEMNITORS to the
SURETY, whether heretofore or hereafter incurred: (i) All the
rights of the PRINCIPAL or INDEMNITORS in, and arising in
any manner out of any CONTRACT; (ii) All the right, title and
interest of the PRINCIPAL or INDEMNITORS in and to all
machinery, equipment, plant, tools, inventory and materials which
are now, or may hereafter be utilized in connection with any
CONTRACT, regardless of whether they are located at a
construction site, in storage elsewhere, or in transit anywhere; (iii)
All the right, title, and interest of the PRINCIPAL or
INDEMNITORS in and to all subcontracts and purchase orders let
or to be let in connection with any CONTRACT and in and to all
surety bonds supporting such subcontracts or purchase orders; (iv)
All the right, title and interest of the PRINCIPAL or
INDEMNITORS in and to any actions, causes of action, claims or
demands whatsoever which the PRINCIPAL or INDEMNITORS
may have or acquire against any party to any CONTRACT, or
actions, causes of action, claims or demands arising out of or in
connection with any CONTRACT including but not limited to
those against obliges on bonds, design professionals, general
contractors, subcontractors, laborers or materialmen or any person
furnishing or agreeing to furnish or supply labor, material,
supplies, machinery, tools, inventory or other equipment in

connection with or on account of any CONTRACT and against any surety or sureties of any oblige, general PRINCIPAL, subcontractor, laborer, or materialmen; (v) All monies retained and any and all monies that may be due or which hereafter become due on account of any CONTRACT, bonded or unbonded, or on any promissory note or account receivable; (vi) Any and all right, title, interest in, or use of any patent, copyright or trade secret which is or may be necessary for the completion of any bonded work; (vii) All monies due or to become due to PRINCIPAL or INDEMNITORS on any policy of insurance relating to any claims arising out of the performance of any CONTRACT, including, but not limited to, claims under builders risk, liability, fire, employee dishonesty or workers compensation insurance policies, including premium refunds; and (viii) Any and all undisbursed loan funds, deposits or interest reserve accounts to which PRINCIPAL or INDEMNITORS may be entitled, and any and all collateral for and undertakings given by the PRINCIPAL or INDEMNITORS in connection with any CONTRACT or obligation.

B. SURETY shall have the full and exclusive right (but not the obligation), in its name or in the name of the PRINCIPAL or INDEMNITORS, to prosecute, compromise, release or otherwise resolve any of the claims, causes of action or other rights assigned to SURETY, upon such terms as SURETY, in its sole discretion shall deem appropriate.

C. The PRINCIPAL and INDEMNITORS hereby irrevocably nominate, constitute, appoint and designate the SURETY, or its designee(s), through its or their authorized representative(s), as their attorney-in-fact with the right, but not the obligation, to exercise all of the rights of the PRINCIPAL and INDEMNITORS, assigned, transferred and set over to SURETY in this Agreement, and in the name of the PRINCIPAL and INDEMNITORS to make, execute, and deliver any and all additional or other assignments, documents, papers, checks, drafts, warrants or other instruments made or issued in payment of any obligation to which SURETY has the right to receipt of payment pursuant to this Agreement deemed necessary and proper by the SURETY in order to give full effect not only to the intent and meaning of the assignments made in this Agreement, but also to the full protection intended to be herein given to the SURETY under all other provisions of this Agreement. The PRINCIPAL and INDEMNITORS hereby ratify and confirm all acts and actions taken and done by SURETY or its designee(s) as such attorney-in-fact.

**V. REMEDIES UPON DEFAULT**

A. In the event of any EVENT OF DEFAULT as described in this Agreement, SURETY shall have the right, at its option, and in its sole and absolute discretion, and is hereby so authorized by PRINCIPAL and INDEMNITORS to take any one or more of the following actions: (i) To consent to any change in or alteration in any CONTRACT or in any and all plans and specifications relating thereto; (ii) To take over any CONTRACT and arrange for its completion; (iii) To take possession of PRINCIPAL'S equipment, materials, and supplies at the site of the work or elsewhere, and PRINCIPAL'S office equipment, books and records as are necessary and utilize the same for completion of any CONTRACT; (iv) To advance or loan such funds or guarantee a loan for funds either prior to or after default, as SURETY shall deem necessary for the completion of any CONTRACT and for the discharge of SURETY in connection with any CONTRACT.  The repayment of such advance or loan shall be the responsibility of the PRINCIPAL and INDEMNITORS; (v) To file an immediate suit to enforce the provisions of this Agreement; (vi) To take possession of the work performed and to be performed pursuant to all or any part of any CONTRACT, and at the expense of PRINCIPAL and INDEMNITORS, to complete the performance required by the obligation or CONTRACT or to cause the same to be completed by others or to consent to the completion thereof, and to take any other action which SURETY may deem appropriate in connection therewith; (vii) in its name or in the name of the PRINCIPAL or INDEMNITORS to adjust, settle or compromise any claim, counterclaim, demand, suit or judgment involving any BOND or to take whatever other action it may deem necessary, expedient or appropriate with respect to such matter.  SURETY'S determination as to whether any such claim, counterclaim, demand, suit or judgment should be settled or defended shall be binding and conclusive upon the PRINCIPAL and INDEMNITORS.

B. Any such action may be taken by SURETY with or without SURETY exercising any other right or option conferred upon SURETY by law, equity or the terms of this Agreement, and without waiving any other right or option so conferred upon SURETY.

C. At its sole option, SURETY may reduce the amount of PRINCIPAL'S and INDEMNITORS' liability to SURETY hereunder by applying to such liability any money payable to PRINCIPAL and/or INDEMNITORS by SURETY.  The money payable to PRINCIPAL or INDEMNITORS may be, but is not

limited to, any money payable by SURETY, in the event SURETY, by separate contract is an insurer of PRINCIPAL or INDEMNITORS or is an insurer of any other individual or legal entity, or any money payable to PRINCIPAL or INDEMNITORS as a return of unearned or other premiums, or money payable to settle a claim of PRINCIPAL or INDEMNITORS against SURETY or any individual or other legal entity insured or bonded by SURETY. Nothing contained herein shall operate to enlarge any obligations of SURETY to PRINCIPAL or INDEMNITORS beyond those contained in this Agreement or in any such other contract of insurance.

D. PRINCIPAL and INDEMNITORS agree that all amounts due to SURETY hereunder, and all liabilities of PRINCIPAL and INDEMNITORS to SURETY are separate and independent from any actual or alleged liability of SURETY to PRINCIPAL and INDEMNITORS, and that no set-off of any such amounts or claims shall be permitted to be exercised by PRINCIPAL and INDEMNITORS against SURETY nor used as a defense against any claim of SURETY. The PRINCIPAL and INDEMNITORS waive and subordinate all rights of indemnity, subrogation and contribution each against the other until all obligations to the SURETY under this Agreement, at law or in equity, have been satisfied in full.

14.     Pursuant to the forgoing GAI, the Defendants, and each of them, as Indemnitors, agreed to indemnify and hold harmless Hudson from any losses, costs, or expenses, including attorneys' fees incurred by Hudson herein.

15.     To date, the Indemnitors, and each of them have breached the terms and conditions of the GAI.

16.     Because of the number of claimants under the Bond, Hudson incurred losses related to the same in the amount of $75,000.00, and incurred attorneys' fees, costs and expenses related to the same in the amount of $6418.46, and it expects to incur additional attorneys' fees and costs to prosecute this action.

17.     Hudson is entitled to judgment against each Indemnitor, jointly and severally, for all of its losses, costs, and expenses, including attorneys' fees incurred herein, pursuant to the terms and conditions of the Indemnity Agreement in favor of Hudson.

## COUNT II
## SPECIFIC PERFORMANCE

18.     Hudson hereby restates, reiterates, and realleges each and every allegation set forth in Paragraphs 1 – 18 above as if fully set out herein verbatim.

19.     Hudson has demanded that the Defendants honor their obligations to it under the Indemnity Agreement, and the Defendants have refused and continue to refuse to do the same.

20.     Hudson is entitled to specific performance of the Indemnity Agreement, and to be placed in funds or to receive collateral from the Defendants in an amount equal to Hudson's loss and potential losses under its Bond, which amount is currently $75,000.00

21.     Hudson reserves the right to supplement this Complaint to conform to its actual losses under the Bond.

NOW, WHEREFORE, the Plaintiff, Hudson Insurance Company, demands:

1.     Judgment, joint and several against the Defendants, Stice Family Logistics, LLC, Nathan Stice, and Kendra Stice, and each of them, for its losses, costs, expenses, and attorneys' fees incurred herein in the current amount of $75,000.00, and $6418.46 for attorneys' fees and costs, respectively;

2.     Judgment for specific performance under the terms and conditions of the Indemnity Agreement requiring the Defendants, Stice Family Logistics, LLC, Nathan Stice, and Kendra Stice, jointly and severally, to deposit with Hudson Insurance Company, the amount of $75,000.00.

3.     For any and all other relief which the Court may deem appropriate.

4.      Hudson reserves the right to amend this pleading or supplement the same with respect to any additional attorneys' fees and costs incurred by Hudson incurred in the prosecution of this action.

Respectfully Submitted,

/s/ Rebecca L. Galloway
REBECCA L. GALLOWAY
WARD, HOCKER & THORNTON, PLLC
9300 Shelbyville Road, Suite 700
Louisville, KY  40222
Telephone:     (502) 583-7012
Facsimile:      (502) 583-7018
rebecca.galloway@whtlaw.com
Counsel for Plaintiff Hudson Insurance Company